FILED
10:00 am Jun 13 2023
Clerk U.S. District Court
Northern District of Ohio
Akron

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ARGO WEALTH MANAGEMENT, INC, ET AL. | ) ) ) | CASE NO: 5:22-cv-1137 |
| Plaintiffs, | ) ) | JUDGE JOHN ADAMS |
| v. | ) ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| JOHN BREMNER, ET AL. | ) ) ) | |
| Defendants. | ) ) | |

Pending before the Court is a motion to dismiss filed by Defendants John Bremner, William Reavis, and Thomas Burke (collectively "Defendants"). Upon review, the motion to dismiss is GRANTED, and this matter is DISMISSED.

**I. Factual Background**

This action was brought by Plaintiffs Argo Wealth Management, Inc., Aurora Hill Ltd., and Dan Miller against Defendants, all of whom are residents of the state of Illinois. Dan Miller and Argo Wealth Management, Inc. are general partners of Aurora Hill Ltd. Reavis suggested that Bremner invest in Aurora Hill Ltd, and Bremner invested $200,000 in January 2019. Following the investment, Bremner was admitted to Aurora Hill as a limited partner. Bremner lost approximately half his investment in a matter of months and in June 2019, gave notice of his desire to withdraw from the partnership effective September 2019. Aurora Hill consented to Bremner's withdrawal from the partnership.

In August 2019, Reavis sent an email to Bremner apologizing for introducing him to the costly investment. Reavis and Bremner were both physically located in the state of Illinois at the time this email was sent and received.  The email, in relevant part, stated:

> First, I'd like to say because of what transpired with Aurora Hill I have completely disassociated myself from Dan Miller and Argo Futures. Our gut feeling of the man we have found out was unfortunately spot on. As I mentioned previously, I was led to that office via colleagues I thought were trustworthy. I feel duped and in turn I'm sure you did as well. And it's not even like I was being compensated from this investment vehicle, although I thought I would be to some regard, I never even received commissions for activity in the Aurora Hill Fund and now it may cost me a nice client. Just last week his lack of response to a simple question regarding portfolio complexion is unprofessional to say the least.
>
> As to your comment on my subsequent response to what transpired with Aurora Hill. I feel, I couldn't have been more aggressive in calling them out on not managing it correctly by selling us on a product that was way overly exposed to one manager. Now, this was more behind the scenes but I spent weeks on the phone with them trying to make the situation right by you. Too little too late [sic] I guess but I was able to get the fund redesigned on a fashion that I felt would do well. But at that point I was basically in damage control mode. And the reason they moved so quickly to get that done is I was using compliance terms that, I believe, scared the crap out of them. That is also why, again I believe, I was able to offer you the favorable position I was able to offer you.

Doc #1, Page ID #14.  This communication appears to form the basis of Plaintiffs' defamation claims against Defendants.

In May of 2020, Plaintiffs filed a similar action in the Summit County Court of Common Pleas against Reavis, alleging defamation per se, defamation per quod, and tortious interference with business relations. Reavis successfully petitioned that court to stay the proceedings and compel arbitration.

In August 2020, Bremner filed a complaint in Illinois with the National Futures Association against Daniel Miller and Argo Wealth Management, Inc. in which Burke was Bremner's attorney. That matter was heard before a three-judge panel of the National

Futures Association who ruled in favor of Dan Miller and Argo Wealth Management. The National Futures Association also determined that Miller cannot reapply for National Futures Association membership status for a period of three years, and if Miller again seeks and is granted National Futures Association membership, he cannot register or act as a commodity pool operator, associated person of a commodity pool operator, or principal of a commodity pool operator for an additional two years. The National Futures Association also decided that Argo Wealth Management may never reapply for National Futures Association Membership in any capacity or act as a principal for a National Futures Association member.

Following Arbitration with the National Futures Association, Reavis filed a motion to dismiss for lack of personal jurisdiction, similar to the one being decided here, in August of 2021. The Summit County Court of Common Pleas dismissed the action for lack of personal jurisdiction under R.C. § 2307.382(A)(1), R.C. § 2307.382(A)(6), and based on the requirements of due process.

## II. Personal Jurisdiction - Reavis

### a. Collateral Estoppel

Plaintiffs are collaterally estopped from asserting that this Court has personal jurisdiction over Reavis because the Summit County Court of Common Pleas issued a final decision on this matter determining that Reavis was not subject to Ohio jurisdiction.

A dismissal for lack of personal jurisdiction has preclusive effect upon subsequent litigation in a court bound by the same jurisdictional limits. *Enginetec Corp. v. Boutin*, No. 4:09CV568, 2009 U.S. Dist. LEXIS 147968 at *9 (N.D. Ohio July 27, 2009). "Collateral estoppel [] prevents parties or their privies from relitigating facts and issues in a subsequent

3

suit that were fully litigated in a prior suit." *Thompson v. Wing*, 70 Ohio St.3d 176, 183, 1994-Ohio-358. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81 (1984). The Sixth Circuit discussed in *N.A.A.C.P, Detroit Branch v. Detroit Police Officers Ass'n* the requirements of collateral estoppel:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

821 F.2d 328, 220 (6th Cir. 1987).

There is no dispute that 1) the state court resolved the precise issue of personal jurisdiction, 2) that its resolution of the issue was necessary to the outcome, 3) that the prior proceeding was a judgment on the merits, and 4) that Plaintiffs had a full and fair opportunity to litigate the matter.

With respect to the third component, the Court notes:

> In Ohio, for an order to constitute a final judgment on the merits for purposes of collateral estoppel, it must be an immediately appealable order. *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St. 3d 470, 2006 Ohio 6553, 861 N.E.2d 109, 118 (Ohio 2006) ("Essentially, collateral estoppel prevents parties from relitigating facts and issues that were fully litigated in a previous case. The question here is whether the previous facts and issues were 'fully litigated,' given that the case terminated with a dismissal by the plaintiffs. The issues must have been determined by a final appealable order."); *Anderson v. Eyman*, 180 Ohio App. 3d 794, 2009 Ohio 102, 131, 907 N.E.2d 730 (Ohio Ct. App. 2009) ("[I]n order for [collateral estoppel] to apply the issues must have been determined by a final appealable order.")

*D'Ambrosio v. Bagley*, 688 F. Supp. 2d 709, 735 (N.D. Ohio 2010). Here, the Summit County Court of Common Pleas order explicitly states that its order is final

4

and appealable. Therefore, the previous proceedings resulted in a final judgment on the merits.

Finally, with respect to the final prong set forth above, the Court must examine whether the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. When determining whether collateral estoppel applies to a party that was not in the original lawsuit, privity can be found through contractual or beneficiary relationship or simply through "mutuality of interest, including an identity of desired result." *Stewart v. IHT Ins. Agency Grp. LLC Welfare Ben. Plan*, No. 2:16-cv-210, 2020 U.S. Dist. LEXIS 104375 at *15 (S.D. Ohio June 15, 2020). "An interest in the result and active participation in the original lawsuit may also establish privity." *Id*. Two of the three Plaintiffs in this action were parties in the previous litigation. Argo Wealth Management was not a party to the original litigation, but is the general partner of Aurora Hill, Ltd., who was a party to the original litigation. Because of this, Argo Wealth Management is in privity with the Plaintiffs in the prior action. Plaintiffs in the prior proceedings had a full and fair opportunity to litigate the issue of personal jurisdiction over Reavis in the prior proceedings, and therefore the final element of collateral estoppel is present.

Plaintiffs seek to avoid the preclusive effect of the prior court decision by asserting that certain *claims* were not ripe at the time of that dismissal. However, there are no *facts* related to conduct in Ohio that have come into existence that would call into question the state court's decision finding that it lacked jurisdiction over Reavis. Accordingly, with all elements of collateral estoppel present, the dismissal for lack of personal jurisdiction over

5

Reavis in the prior proceedings has a preclusive effect in the current case. Reavis is dismissed from this action for lack of personal jurisdiction.

### III. Claims Barred by the Relevant Statutes of Limitation

#### a. Malicious Prosecution

Plaintiffs' claim of malicious prosecution is barred by the statute of limitations set forth by Ohio Law. Ohio Law provides that a claim for malicious prosecution "shall be commenced within one year after the cause of action accrued." R.C. § 2305.11(A). The malicious prosecution claim is derived from the NFA arbitration decisions that were issued on March 17, 2021. Plaintiffs commenced this action on June 27, 2022, and therefore, on its face, the claim is untimely.

Plaintiffs suggest that the claim is timely because they originally filed with this Court on December 14, 2021. However, that action was dismissed for want of prosecution on April 7, 2022. Fed.R. Civ.P. 41(b) provides:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19— operates as an adjudication on the merits.

While the Court's dismissal was "without prejudice," the order was issued after the expiration of the statute of limitations for this claim. As such, the dismissal was in practical effect a dismissal on the merits. Moreover, the Court notes that the prior matter was dismissed because Plaintiffs *entirely* failed to respond to the Court's order to detail why service had not been made. Under those unique circumstances, the Court finds it appropriate to conclude that its prior dismissal was an adjudication on the merits.

6

Accordingly, Plaintiffs cannot rely on the savings statute, O.R.C. § 2305.19, and their claim for malicious prosecution is barred by the one-year statute of limitations.

### b. Civil Conspiracy

Under Ohio Law, "a claim for conspiracy cannot be made subject of a civil action unless something is done which, in the absence of the conspiracy allegation, would give rise to an independent cause of action." *Cully v. St. Augustine Manor*, No. 67601, 1995 Ohio App. LEXIS 1643, at *10 (Ct. App. Apr. 20, 1995); *Katz v. Banning*, 84 Ohio App. 3d 543, 552 (1992); *Palmer v. Westmeyer*, 48 Ohio App. 3d 296, 300 (1988). "[T]he applicable statute of limitations for the underlying cause of action applies to the civil conspiracy charge." *Cully* at *11.

Here, the underlying cause of action for Plaintiffs' civil conspiracy claim is malicious prosecution. Accordingly, the Court's analysis above applies equally to this claim and it is time barred.

### c. Defamation Per Se & Defamation Per Quod.

Defamation per se occurs when the defamation is manifested by the very words spoken. *Gosden v. Louis*, 116 Ohio App. 3d 195, 206 (1996). Defamation per quod occurs when a statement that is innocent on its face becomes defamatory through interpretation or innuendo. *Id*. In Ohio, the statute of limitations for defamation is one year. R.C. § 2305.11(A). Ohio has held that the statute of limitations for defamation, be it slander or libel, begins to run at the time the words are written or spoken, not when the plaintiff becomes aware of them. See, *Hester v. Case Western Reserve Univ.*, 2019-Ohio-1991, ¶ 11 (Ct. App.); *Singh v. ABA Publishing ABA*, 10th Dist. Franklin No. 02AP-1125, 2003-

7

Ohio-2314, ¶ 22; *Lyons v. Farmers Ins. Group of Companies*, 67 Ohio App.3d 448, 454 (1990); *Rainey v. Shaffer*, 8 Ohio App.3d 262, 263 (1983).

The operative facts giving rise to the defamation claims occurred in 2019. As the savings statute is similarly inapplicable to these claims, they are also time barred.

**Count Six – Breach of Contract against Bremner**

Because Bremner entered into a limited partnership with an Ohio company, it appears that personal jurisdiction may be appropriate. However, the complaint wholly fails to state a cause of action for breach of contract. Instead, the complaint appears to allege that the partnership voluntarily chose not to impose certain provisions of the agreement. There is *no allegation* of any provision that *Bremner* breached. Accordingly, the complaint does not state a cause of action for breach of contract.

### IV. Conclusion

Based upon the above, Defendants' motion to dismiss is GRANTED. This matter is hereby DISMISSED.

IT IS SO ORDERED.

June 13, 2023 /s/ Judge John R. Adams
DATE JUDGE JOHN R. ADAMS
UNITED STATES DISTRICT COURT